UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

| | |
|---|---|
| _____ )<br>MASSACHUSETTS FAIR HOUSING )<br>CENTER, KRZYSZTOF ROWINSKI, )<br>ANNA MICINSKA, and )<br>THERESA DECKER, )<br> )<br> Plaintiffs, )<br> )<br> v. )<br> )<br>MONICA BHAREL, COMMISSIONER, )<br>MASSACHUSETTS DEPARTMENT OF )<br>PUBLIC HEALTH, *in her official capacity*; )<br> )<br>JANA FERGUSON, DIRECTOR, )<br>MASSACHUSETTS BUREAU OF )<br>ENVIRONMENTAL HEALTH, *in her* )<br>*official capacity*; and )<br> )<br>TERRY HOWARD, DIRECTOR, )<br>MASSACHUSETTS CHILDHOOD )<br>LEAD POISONING PREVENTION )<br>PROGRAM, *in her official capacity*; )<br> )<br> Defendants. )<br>_____ ) | COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF |

## **INTRODUCTION**

1.     This is a civil rights action brought by a fair housing organization and two families with children to redress the facially discriminatory provisions and resulting harms generated by the Massachusetts Lead Poisoning Prevention and Control Act ("Lead Law") against families with children under age six. Plaintiffs seek prospective injunctive relief against Defendants to enjoin their ongoing enforcement of the discriminatory terms within the Massachusetts Lead Law which violate the Federal Fair Housing Act ("FHA"), by creating a discriminatory rental housing

market for families with children under age six.  The discriminatory terms of the Lead Law are invalid under the Fair Housing Act, 42 U.S.C. § 3615.

2.      The Massachusetts Lead Law was enacted in 1971 to prevent childhood lead poisoning by eliminating children's exposure to lead paint hazards in residential housing.  Childhood lead poisoning can cause devastating and irreparable harm, but is completely preventable.  The source of most childhood lead poisoning is lead-based household paint which is presumed to be present in structures built before 1978, when lead was banned as an ingredient in household paint.

3.      The Lead Law requires owners to engage in preventive deleading activities only when a child under age six will reside in a unit. This provision is discriminatory on its face, as it only applies when a child under age six resides in the unit. Unfortunately, this section of the Lead Law—which was intended to protect families with children under age six—has harmed them instead.  It incentivizes landlords to violate the law:  either by refusing to rent to these families, by imposing different terms and conditions on these families, or by refusing to delead their properties before renting to these families, who are unjustly forced to choose between housing and the health of their children.

4.      Defendants report that only approximately 10% of pre-1978 housing stock in Massachusetts has had an inspection for lead and been confirmed free from lead hazards. With over 1.8 million housing units in Massachusetts built before 1978 still not considered lead safe,

children will likely continue to be exposed to high levels of lead in their homes.[1] As a result, lead exposure continues to pose a significant health risk for children residing in Massachusetts.[2]

5.     There are only two plausible explanations for this trivial rate of preventive deleading: landlords are engaged in rampant housing discrimination against families with children to avoid the costs of lead abatement, or landlords are otherwise violating the Lead Law by refusing to abate lead hazards when renting to these families.  In either event, families with children under age six are harmed.

6.     A nondiscriminatory policy to protect the housing rights of families with children is urgently needed to conform the Lead Law to the FHA and to accomplish the original goal of the Lead Law:  to eliminate children's exposure to lead-paint hazards in their homes, which as Defendants admit, "remains a significant health risk for children across the Commonwealth of Massachusetts."[3] Other jurisdictions, such as the state of Maryland and the cities of Philadelphia, Rochester, and Cleveland, have adopted nondiscriminatory policies that require all landlords to engage in preventive deleading regardless of the age of residents. Adopting a nondiscriminatory policy of universal lead abatement, which can be phased in over time, is the only way to protect all children from childhood lead poisoning and housing discrimination.

7.     Therefore, Plaintiffs seek to enjoin the ongoing enforcement of the Lead Law's discriminatory provisions and to replace them with a nondiscriminatory alternative that will actually protect rather than harm families with children under age six.

---

[1] Mass. Dep't of Public Health, Bureau of Environmental Health, *Data Brief: Childhood Lead Exposure in Massachusetts*, 001347 (2019) [hereinafter 2019 Data Brief], *available at* https://drive.google.com/open?id=150KTZ9RUN3euVoAi50Lu7rDuHY2bb6cJ.

[2] Mass. Dep't of Public Health, *Data Brief: Childhood Lead Exposure in Massachusetts* (2016), *available at* https://drive.google.com/file/d/15EI8JYfwwCwn9QLYDcYTk9kceU0ALJGT/view?usp=sharing.

[3] *Id.*

## JURISDICTION AND VENUE

8.    This Court has original jurisdiction over the subject matter of Plaintiffs' claims for violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, pursuant to 42 U.S.C. § 3613(a) and 28 U.S.C. § 1331.

9.    Plaintiffs seek declaratory and injunctive relief as authorized by 28 U.S.C. §§ 2201 and 2202.

10.   Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that all the claims arose in the District of Massachusetts and all parties reside or do business in Massachusetts.

## PARTIES

11.   Plaintiff Massachusetts Fair Housing Center ("MFHC") is a non-profit full-service fair housing organization dedicated to eliminating systemic housing discrimination and creating inclusive communities in the Commonwealth of Massachusetts. Founded in 1989, MFHC has been continuously operating for thirty years, with a service area that includes Worcester, Franklin, Hampshire, Hampden and Berkshire counties.

12.   Plaintiff Teresa Decker is the mother of a five-year-old boy. They currently reside in a rental dwelling in Worcester, Massachusetts. Ms. Decker has experienced housing discrimination based on the Lead Law and may experience this discrimination again in the future.

13.   Plaintiffs Krzysztof Rowinski and Anna Micinska are the parents of a one-year-old son. They currently reside in a rental dwelling in Florence, Massachusetts. They have experienced housing discrimination based on the Lead Law and may experience this discrimination again in the future.

14.     Defendant Monica Bharel is the Commissioner for the Massachusetts Department of Public Health (DPH). Massachusetts DPH is a state agency in the Commonwealth of Massachusetts responsible for overseeing the Massachusetts Bureau of Environmental Health (BEH) and the Massachusetts Childhood Lead Poisoning Prevention Program (CLPPP).   In 1971, the Massachusetts DPH was designated by the legislature to create a statewide program for the prevention and control of childhood lead poisoning. Commissioner Bharel is named as a Defendant in her official capacity.

15.     Defendant Jana Ferguson is the Director of the Massachusetts Bureau of Environmental Health (BEH).  The BEH enforces laws and regulations related to childhood lead exposure. It is one of eight bureaus within the Massachusetts DPH.  Director Ferguson is named as a Defendant in her official capacity.

16.     Defendant Terry Howard is the Director of the Massachusetts CLPPP, the state agency that is invested with the authority to administer and enforce the Massachusetts Lead Law. CLPPP is a program of the Massachusetts BEH and the Massachusetts DPH.  Director Terry Howard is named as a Defendant in her official capacity.

## FACTS

### A.  The Massachusetts Lead Law

17.     On November 15, 1971, Massachusetts Governor Francis Sargent signed a bill into law intended to prevent childhood lead poisoning. The law, entitled the Massachusetts Lead Poisoning Prevention and Control Act ("Lead Law"), codified at Massachusetts General Laws, chapter 111, §189A, et seq., as amended, has been in effect throughout the Commonwealth of Massachusetts since that time.

18.     The Lead Law directed the Department of Public Health to "establish a statewide program for the prevention, screening, diagnosis and treatment of lead poisoning, including elimination of the sources of such poisoning…."[4] This program is now referred to as the Childhood Lead Poisoning Prevention Program ("CLPPP"). The law further directed CLPPP to conduct public education campaigns, oversee screening for elevated lead levels of children under six and engage in other activities to enforce the provisions of the Lead Law.[5]

19.     The original versions of the bill proposed in the House required all property owners to engage in lead abatement in all housing throughout the Commonwealth, without regard to the age of residents.[6] Ultimately, however, the legislature decided not to require universal abatement by all property owners.  Instead, the law requires that "[w]henever a child under six years of age resides in any premises in which any paint, plaster or other accessible structural material contains dangerous levels of lead, the owner shall abate or contain said paint…."[7].  It is this provision of the Lead Law that Plaintiffs seek to replace with a nondiscriminatory, more effective, alternative that protects rather than harms young children.

20.     In 1985, the Massachusetts Legislature was concerned about the efficacy of the Lead Law and decided to establish a twenty-person commission, the Special Legislative Commission on Lead Poisoning Prevention, to investigate the adequacy of lead poisoning prevention efforts in the Commonwealth and make recommendations to improve the Lead Law. The Commission's

---

[4] Mass. Gen. Laws ch. 111, §190.
[5] See id. §192 - §197.
[6] Massachusetts Advocacy Center, *State of Danger: Childhood Lead Paint Poisoning in Massachusetts* 28 (1974), *available at*
https://drive.google.com/file/d/17gZMgh8hASYGxzdb_MRGXuJdmBZkdfPI/view?usp=sharing.
[7] *Id.* §197.

Report ("Commission Report"), released in December of 1986, strongly condemned the failure of the Lead Law to achieve its goal of preventive deleading, and highlighted the following facts:

- "out of approximately 1.2 million housing units in the Commonwealth containing lead, less than 20,000 have been deleaded in the past 15 years…;

- the burden of dealing with the lead poisoning crisis has fallen almost exclusively on three groups: poisoned children, the parents of poisoned children, and the owners of residential property in which poisoned children reside;

- massive discrimination exists in the private rental housing market against families with children under six years of age, to the extent that some landlords now advertise the fact that their units contain lead paint.

  Were the Commonwealth to continue deleading efforts at its current rate, we would see the housing stock fully deleaded around the year 2571." [8]

21.     Following the publication of the 1986 Commission Report, in 1987, the Massachusetts Legislature amended the Lead Law to address the massive discrimination against families with children. A section was added making it unlawful to discriminate against families with children because the presence of lead paint would trigger abatement obligations under the Lead Law. The amended statute further provided that refusing to rent to families with children would not constitute compliance with the Lead Law.

22.     Unfortunately, the 1987 amendments prohibiting discrimination against families with children did not create any new legal rights for these families, since discrimination against families with children was already prohibited under Mass. Gen. Laws c. 151B, § 4. There is no evidence that this amendment has had any effect on reducing the rampant discrimination against

---

[8] *Report of the Special Commission Relative to the Adequacy of Lead Poisoning Prevention and Control Efforts in the Commonwealth* 55 (1987), *available at* https://drive.google.com/open?id=1GKBm_iYuISvHliGyZT0Sw05nQpq4bENq.

families with children, or that it has significantly increased the rate of deleading activities by landlords.

23.     The Lead Law was amended again in 1993 to allow property owners to comply with the law over a two-year period and to approve the use of encapsulant paint for deleading.[9]  There is no evidence that this amendment has had any effect on reducing the rampant discrimination against families with children, or that it has significantly increased the rate of deleading activities by landlords.

24.     Additional amendments were made to the Lead Law in 2011 to allow a housing provider to lawfully delay the occupancy of a rental unit by thirty days in order to delead the property when a child under the age of six is moving into the dwelling.[10] There is no similar provision allowing a housing provider to delay occupancy for households without a child under age six.

25.     As a result of the Lead Law's delay provision, a rental unit with unabated lead hazards marketed to the public as immediately available would only be immediately available to households without a child under the age of six. That rental unit would never be available immediately to families with children under the age of six, who may have to delay their initial occupancy by up to thirty days without a lease while the work is completed to obtain a certificate of interim control.  The law requires that the family with a child under age six bear the burden and associated costs of finding alternate housing during the thirty-day delay.

26.     Additionally, any pre-1978 dwelling that has not been deleaded cannot be rented to a family with a child under age six without violating the state sanitary code because it contains an

---

[9] Mass. Gen. Laws ch. 111, §197(h)(2019).
[10] *Id.*

environmental toxin.[11]  Such a dwelling could be rented to households without a child under age six without violating the state sanitary code.

27.     Under the Lead Law, landlords can impose these different and disadvantageous terms and conditions that harm families with children under age six.

**B.     Evidence of Housing Discrimination Caused by the Lead Law**

**1.  A key advocacy group warns of systemic victimization of families caused by the Lead Law.**

28.     In 1973, the Massachusetts Advocacy Center ("Advocacy Center") was established to research and monitor Massachusetts state government, identify policy failures, and advocate for reforms. To achieve its mission the Advocacy Center sought to inform policy makers, the public and community/professional organizations about the unmet needs of Massachusetts citizens, particularly children. In accordance with its mission, in 1974, the Center published "State of Danger, Childhood Lead Poisoning in Massachusetts."[12]

29.     This important work explored the legislative history of the Lead Law and sharply criticized the policy that property owners must delead only when a child under the age of six is present, stating:

> [I]f the law provided that all housing, irrespective of the age of the residents, must be deleaded, the incentive for landlords either to bar families from the units or evict them if they complain, would be reduced substantially. As enforcement provisions now stand, they establish systemic victimization of families with small children in search of housing.[13]

---

[11] Mass. Gen. Laws ch. 111, §198 (2019).

[12] Massachusetts Advocacy Center, *State of Danger: Childhood Lead Paint Poisoning in Massachusetts* (1974), *available at* https://drive.google.com/file/d/17gZMgh8hASYGxzdb_MRGXuJdmBZkdfPI/view?usp=sharing.

[13] *Id.* at 64.

30.     The experts who authored the 1974 Advocacy Center report recommended that the Legislative leadership or the Governor should move immediately to close existing loopholes in the enabling legislation by first "requir[ing] deleading in any house, irrespective of the age of the residents."[14]

### 2.   Massachusetts State Agencies acknowledge that the Lead Law creates housing discrimination against families with children.

31.     The Special Commission report sent to the legislature in 1986 admitted that massive housing discrimination exists in the private rental market against families with children under six years of age due to the Massachusetts Lead Law.[15]

32.     The Commission Report also stated that: "A major goal of the 1971 law, preventive deleading, has not been achieved to any significant extent."[16] At the time of the Report, the Commission found that of the approximately 1.2 million housing units in the Commonwealth containing lead, less than 20,000 had been deleaded in the 15 years since the law was passed.[17]

33.     In 1991, the Massachusetts Attorney General's office organized a Lead Poisoning Task Force to make recommendations to reform the lead paint laws. The Attorney General's Report acknowledged the housing discrimination created by the Lead Law, stating, "Some landlords deal with the lead law by simply refusing to rent their lead-containing properties to families with

---

[14] *Id.* at 79.
[15] *Report of the Special Commission Relative to the Adequacy of Lead Poisoning Prevention and Control Efforts in the Commonwealth* (1987), *available at* https://drive.google.com/open?id=1GKBm_iYuISvHliGyZT0Sw05nQpq4bENq.
[16] *Id.* at 54.
[17] Defendants' latest report actually identifies a higher number of units in need of deleading, with approximately 1.8 million pre-1978 housing units containing lead paint. *See* 2019 Data Brief, *supra* note 1.

children under six. These families are often faced with discrimination in trying to find rental housing."[18]

34.    In 2004, CLPPP published a strategic plan, *Massachusetts Strategic Plan to End Lead Poisoning by 2010,* with input from focus groups of parents and property owners. Representatives in both groups admitted that families with children face discrimination due to the Lead Law.[19]

35.    The CLPPP Strategic Plan includes a direct quote from one property owner who admitted that:

> The unfortunate thing about the lead paint program is it has caused a rampant, rampant atmosphere of discrimination in terms of the age of children and I think that is really the ironic result of the lead paint program is [sic] that it was instituted to protect families and has ended up hurting families more.[20]

36.    The Massachusetts Department of Housing and Community Development (DHCD) is the principal state agency charged with combatting poverty and providing economic training and open housing opportunity in Massachusetts. DHCD oversees activities related to emergency and transitional housing and submits a comprehensive housing plan to the Governor annually.[21] Additionally, DHCD, as a recipient of federal funding, is required by the federal Fair Housing Act to produce a report called an Analysis of Impediments to analyze the barriers to fair housing in the state and to make recommendations to overcome them.

---

[18] Scott Harshbarger, Office of the Attorney General, *Report of the Attorney General's Lead Poisoning Task Force* 20 (1992), *available at* https://drive.google.com/file/d/1GH-XdOFBuSOdPAuA6qhh4g7xdPodvejY/view?usp=sharing.

[19] Childhood Lead Poisoning Prevention Program, *Massachusetts Strategic Plan to End Lead Poisoning by 2010*, 12 (2004), *available at* https://drive.google.com/file/d/1YWSuOfV1C-p6RunelY13ZgAwC8jJraD1/view?usp=sharing.

[20] *Id*.

[21] Mass. Gen. Laws ch. 23B, §3 (2019).

37.    In 1998, DHCD's Analysis of Impediments to Fair Housing Plan repeatedly reported lead-based familial status discrimination as a major impediment to fair housing, finding that "landlords faced with expensive lead abatement will sometimes choose instead to avoid liability for lead poisoning by not renting to families with children, especially children under six years of age"[22] and "the [Lead] law has caused property owners to discriminate against families with small children because renting to such tenants mandates deleading."[23]

38.    DHCD's 2013 Analysis of Impediments also acknowledges the discrimination created by the Lead Law, stating, "lead paint issues may compromise available housing for children despite landlord obligations under state law."[24]

39.    DHCD's 2019 draft Analysis of Impediments to Fair Housing Choice also identifies the Lead Law as an impediment to fair housing, stating, "the fact the de-leading is only required in units where children under 6 are present creates a strong financial disincentive for landlords to rent to households with young children."[25]

---

[22] Mass. Dep't of Housing and Community Development, *Analysis of Impediments and Fair Housing Plan* 13 (1998), *available at* https://drive.google.com/file/d/1Ktg3mZP0qa0X-o8PFn_mLLCcEJWAXd4_/view?usp=sharing.
[23] *Id.* at 21.
[24] Mass. Dep't of Housing and Community Development, *Analysis of Impediments to Fair Housing Choice: Access to Opportunity in the Commonwealth* 255 (2013), *available at* https://drive.google.com/file/d/1ALDDrPvuWJ4AHg0u8rSZYdEqw8Bu2piU/view?usp=sharing.
[25] Mass. Dep't of Housing and Community Development, *2019 Analysis of Impediments to Fair Housing Choice* (forthcoming 2019)(manuscript at 336), *available at* https://drive.google.com/file/d/15BK7nofSoMltL7kG8NQhrhKlPCemqyq9/view?usp=sharing.

### 3.   Massachusetts municipalities acknowledge the Lead Law causes housing discrimination against families with children.

40.   The largest cities in Massachusetts—Boston, Worcester, and Springfield—acknowledge that the Lead Law creates discrimination against families with children.[26]

41.   In 2010, Boston completed an Analysis of Impediments to fair housing and found that "the denial of housing to families with children based on the presence of lead-based paint" is one issue "affecting access to privately owned housing by people in protected classes."[27]

42.   A 2012 Analysis of Impediments for the City of Worcester admits that landlords may use the Lead Law to discriminate against potential tenants, noting that:: "Pregnant women and families with children are often discouraged or denied from renting homes with lead paint."[28]

43.   The 2013 Analysis of Impediments completed by the City of Springfield, found that: "property owners throughout the region may seek to avoid renting to families and individuals with young children because of the presence—or the perceived presence—of lead paint in their units and the associated expense of lead abatement and disposal…."[29]

44.   Further, since the early 2000s, at least eight other municipalities have reported on the discrimination against families with children caused by the Lead Law.[30] For example, Lowell

---

[26] City of Boston, *Analysis of Impediments to Fair Housing Choice (2010)*, *available at* https://drive.google.com/open?id=13YUEW3l1qVZPMwN3ojuGuPpGLShf6Wqg; City of Worcester, *Analysis of Impediments to Fair Housing* (2012), *available at* https://drive.google.com/open?id=1Lcd3pm29oOWd2277cyRDuyupj_WEv3zX; City of Springfield, *Analysis of Impediments to Fair Housing* (2013), *available at* https://drive.google.com/open?id=17VIK9rzzTz1I8r3R0SvDEv3SDPQB0JE2.
[27] City of Boston, *Analysis of Impediments to Fair Housing Choice* 84 (2010).
[28] City of Worcester, *Analysis of Impediments to Fair Housing* 38 (2012).
[29] City of Springfield, *Analysis of Impediments to Fair Housing* 53 (2013).
[30] City of Lowell, *Analysis of Impediments to Fair Housing Choice* (2006), *available at* https://drive.google.com/open?id=1mbQLJmBB5Hkjvr4rqfsNvtLbQVPZWK-E; City of Newton, *FY11-15 Analysis of Impediments to Fair Housing Choice* (2015), *available at* https://drive.google.com/open?id=1BL4dsgn77Byjb7ziwEr4_Xl_0Q6kufNs; City of Holyoke, *2012 Update to the*

admitted:  "[m]any landlords are reluctant to rent to families with young children, particularly because of lead paint laws and the high cost of compliance."[31] Northampton's Analysis of Impediments similarly found, "Landlords are disinclined to rent to families with young children out of fear of the costs associated with lead paint abatement, which leads to incidents of housing discrimination on the basis of familial status."[32] The South Shore region has also identified the link between discrimination and the Lead Law, stating, "[t]he age of the housing stock and the greater likelihood of lead paint hazards in for sale or rental housing units is an impediment for households with children."[33]

45.    The Pioneer Valley Planning Commission, the legally designated regional planning agency serving 43 member cities and towns in western Massachusetts, also identified the age of housing as an impediment to fair housing in the 2014 Pioneer Valley Regional Housing Plan, finding "some landlords have tried to avoid renting to families with young children because of the presence – or the perceived presence – of lead paint in their units… [t]his has the effect of limiting the supply and availability of housing."[34]

---

*2007 Analysis of Impediments to Fair Housing Choice* (2012), *available at* https://drive.google.com/open?id=1GbRXJGNWz4RKWGT9xU34ttwIoqZEFCXu; City of Northampton, *Analysis of Impediments to Fair Housing Choice* (2012), *available at* https://drive.google.com/open?id=1BMUansJuE1u5Iq7lzyRFtl6IIb0JZnE2; City of Waltham, *Analysis of Impediments to Fair Housing Choice* (2013-18), *available at* https://drive.google.com/open?id=1pbSieTz4vMyNJ0NLWwHlYQbTlMbA7POu; South Shore HOME Consortium, *Regional Fair Housing Plan* (2014-19), *available at* https://drive.google.com/open?id=1oIavWKp_6IDBGOHNG17TdCTkdNi00CPF; Town of South Hadley, *Analysis of Impediments to Fair Housing Choice* (2016), *available at* https://drive.google.com/open?id=1kx1R3oxSmLhLhRz6xWn8k0JKtROIL9eV; City of Somerville, *Assessment of Fair Housing* (2017), *available at* https://drive.google.com/open?id=1MBp9vHkB4PLHjxpceMn8TQPJo0Ioia2L.

[31] City of Lowell, *Analysis of Impediments to Fair Housing Choice* 15 (2006).
[32] City of Northampton, *Analysis of Impediments to Fair Housing Choice* 19 (2012).
[33] South Shore HOME Consortium, *Regional Fair Housing Plan* 129 (2014-19).
[34] Pioneer Valley Planning Commission, *Pioneer Valley Regional Housing Plan* 62 (2014), *available at* https://drive.google.com/file/d/14EXAFtBsBCBYEOp7ZyUmCYMjn7TiRNjW/view?usp=sharing.

**4.   Fair housing testing shows high rates of discrimination against families with children because of the Lead Law.**

46.   Fair Housing testing is an investigative process in which individuals without the actual intent to rent pose as renters to collect evidence of potential unlawful conduct. Courts have long recognized such testing as an essential method uncovering discriminatory conduct.  For example, the United States Court of Appeals for the Seventh Circuit stated, "It is frequently difficult to develop proof in discrimination cases and the evidence provided by testers is frequently valuable, if not indispensable."[35]

47.   In 2013, Suffolk Law School's Housing Discrimination Testing Program conducted a fair housing testing investigation of 27 rental ads that indicated lead was present in the unit. Discrimination against the testers who stated they had a child under age six was found in 25 out of the 27 paired cases, which is equivalent to a 93% rate of discrimination against families with children under age six.[36]

48.   In 2019, Plaintiff MFHC engaged in a testing project to determine the scope of discrimination against families with children caused by the Lead Law.  Using a paired testing method, Plaintiff MFHC tested 90 apartment units.

49.   Of the 51 tests that yielded valid results, 34 (67%) tests showed evidence of discrimination against fair housing testers who posed as having  a child under  age six, based on a refusal to negotiate, a refusal to  rent, the application of  different terms and conditions, or making discouraging statements about the tester's ability to rent. In four of the cases where there was no evidence of discrimination, the Lead Law did not apply because the property was built

---

[35] *Richardson v. Howard*, 712 F.2d 319, 320 (7th Cir. 1983).
[36] *Id.*

after 1978 when lead was banned in paint manufacturing. This left only 13 out of 51 cases, or 25%, in which there was no evidence of differential treatment against renters with children because of the Lead Law.

### 5.   Discriminatory rental advertisements reveal systemic housing discrimination against families with children under age six.

50.    Between March 2019 and November 2019, Plaintiff MFHC discovered more than 250 advertisements posted by landlords on Craigslist.org for available dwellings that state an outright refusal to rent to families with children under age six due to the presence of lead paint in the rental unit, or include statements discouraging families with young children under age six from applying to rent the unit.

51.    Many advertisements made claims similar to those that Suffolk Law School's Discrimination Testing Program found were a proxy for discrimination against families with children under age six, such as "not deleaded." Moreover, statements such as "the apartment tested positive for lead" or "lead paint unknown" discourage families with children from attempting to rent that apartment.

52.    Other advertisements state that the landlord will refuse to rent to families with young children under age six because of the Lead Law, for example,, "I do not have de-lead certificate for this apartment so cannot rent to families with children under 6 y/o at this time;" "No lead certificate is available, therefore child or children need to be at least 6 years old;" and "Due to lead paint children under 5 yrs of age are not permitted."

53.    The more than 250 listings described above advertised dwellings from 76 different towns and 11 counties across the Commonwealth.

**6.   A national housing study reveals that discrimination against rental applicants with minor children has dropped dramatically, while other studies show that families with children in Massachusetts experience high rates of exclusion.**

54.   A 2016 study released by the United States Department of Housing and Urban Development (HUD) reports that the rate of discrimination against families with children seeking to rent dwellings in the U.S. as a whole has dramatically dropped to near zero.[37]

55.   By contrast, discrimination against families with children under age six who are seeking rental housing in Massachusetts persists at a much higher rate.

56.   As previously noted, MFHC's recent 2019 testing investigation found a 67% rate of differential treatment against families with children under age six when applying for housing. The 2013 testing investigation by Suffolk Law School, based on rental ads that identified a rental property as containing lead paint, resulted in a 93% rate of housing discrimination against families with children under age six.

**7.   News media coverage highlights systemic housing discrimination against families with children.**

57.   Since 1995, the *Boston Globe* has published several articles about discrimination against families with children under age six because of the Lead Law. The first article highlighted the experience of a professional couple who needed a larger apartment after the birth of their first child. The couple reported that once landlords found out they had a child, "they treated us like

---

[37] U.S. Dep't Hous. and Urban Dev., Office of Policy Dev. and Research, *Discrimination against Families with Children in Rental Housing Markets: Findings of the Pilot Study,* 20 (2016), *available at* https://drive.google.com/file/d/1PPN6J3oz55rX5Q_uy9EwhOPgdqmF3aJ5/view?usp=sharing.

we had a disease."[38] The couple had to resort to begging, and when they finally found a landlord who would rent to them, he required them to waive their right to live in a de-leaded unit.

58.　　In 2007, the *Boston Globe* published another story of discrimination because of the Lead Law. The author described the difficulty of her own housing search because she had a child under age six, and quoted attorney Raphael Mares, who stated that the law "really puts significant pressure on landlords to discriminate."[39]

59.　　The most recent *Boston Globe* article focusing on this issue, written in June 2017, entitled *Families Need Not Apply,* reported on the extended housing search of Kara Olivere, a special education teacher with a one-year old child.[40] Ms. Olivere faced repeated rejections because of lead paint, and could not find any landlords or real estate agents who were willing to rent to her or assist in her housing search after they learned she had a one-year-old.[41] It took her nine months to find an apartment, and the landlords who finally agreed to rent to her had already deleaded their apartment. This was the only deleaded apartment she found during her nine-month housing search.

## C.　　Other Jurisdictions Have Enacted Effective Policies to Prevent Childhood Lead Poisoning Without Discriminating Against Families with Children.

60.　　Plaintiffs seek to replace the discriminatory provisions of the Lead Law with a nondiscriminatory alternative, similar to those implemented in other jurisdictions.

---

[38] Tina Cassidy, New Lead Paint Law Slow to Create Impact: Lack of Publicity Leaves Confusion, Boston Globe, Oct. 7, 1995, *available at* https://drive.google.com/file/d/1V90Swmd3jp1wl7Azq2_mQqevhxqC8uzY/view?usp=sharing.

[39] Kathleen Burge, *Lead Law Fallout: Lead Paint Poisoning is Down, but Families Face Another Harship [sic] Landlords Don't Want Them,* Boston Globe, Mar. 18, 2007, *available at* https://drive.google.com/file/d/1oLCgTSQ4t9huVtRjbocRkGRWVGF7jwdj/view?usp=sharing.

[40] Jon Gorey, *Families Need Not Apply: People with Young Children Face 'Rampant' Discrimination in Apartment Search*, Boston Globe, June 25, 2017, https://drive.google.com/open?id=1IMgNuVhPTPFSL-xmsfDdq7PvmalwbV3U.

[41] *Id.*

61.     For example, the State of Maryland's "Reduction in Lead Risk in Housing" Law requires all rental dwellings constructed before 1978 to register with the Maryland Department of the Environment and meet the lead poisoning risk reduction standard, which involves passing an inspection for lead contaminated dust prior to every change in occupancy.  In order to pass the inspection, the property must be free of defective paint on the interior and exterior of the property.[42]

62.     In the City of Rochester, the Lead-Based Paint Poisoning Prevention Ordinance was implemented in July 2006, requiring inspections for lead paint hazards of pre-1978 rental units in order to obtain certificates of occupancy.  Deteriorated paint, both on the interior and exterior of the unit, are required to have a protective covering and must be repaired using Lead Safe Work Practices.[43]  One study found that the rate of lead poisoning between 2000 and 2016 in Monroe County, New York, where Rochester is located, has been reduced by 85%.[44]

63.     In September 2019, the Philadelphia City Council voted to amend their Lead Law, which had required landlords to engage in lead abatement based on the age of the child living in a unit. The Council reviewed extensive evidence showing that the old policy discriminated against families with children and was ineffective. The new law requires all landlords of pre-1978 rental units to mitigate lead paint hazards, starting with properties located in zip codes with the highest rates of lead poisoning.

---

[42] Md. Code Ann., Envir. § 6-801, et seq.; Maryland Department of the Environment, *Standard of Care: What Owners Need to do to Comply with Maryland's "Reduction of Lead Risk in Housing" Law, available at* https://mde.maryland.gov/programs/LAND/LeadPoisoningPrevention/Pages/rentalowners.aspx
[43] City of Rochester, Certified Resolution No. 2005-23.
[44] McDade, Elizabeth, *"The Mission: End Childhood Lead Poisoning in Rochester"* Shelterforce (Fall 2018), *available a* https://shelterforce.org/2018/11/13/the-mission-end-childhood-lead-poisoning-in-rochester/.

64.     The laws and policies in these jurisdictions represent the variety of alternatives that exist for phasing in deleading over time in ways which are nondiscriminatory and will better accomplish the goal of preventing childhood lead poisoning by decreasing children's exposure to lead paint.

**D.     Plaintiff Theresa Decker**

65.     Plaintiff Theresa Decker is the mother of a five-year-old child. She may become the parent, foster parent or guardian of more children in the future.

66.     In 2016, Ms. Decker and her son, who was then two-and-a-half years old, were living in Worcester, Massachusetts.

67.     Ms. Decker had a housing choice voucher, also known as a Section 8 voucher, administered by the Worcester Housing Authority, which helped to pay a portion of her rent.

68.     The apartment building Ms. Decker and her son lived in was poorly maintained. There were uncontrolled infestations of rodents and insects. Graffiti appeared inside and outside the building, and drugs were openly sold in her neighborhood.  The unsafe conditions worsened over time.

69.     Ms. Decker was desperate to move and fully committed to searching for a new dwelling. Despite being a well-qualified applicant and diligent in pursuing rental advertisements, Ms. Decker could not find a landlord in Worcester County who would rent to her for well over a year.  The primary cause of the repeated discrimination she faced was that she had a child under age six, and rental property owners had neither a lead certificate nor the willingness to engage in mandatory lead abatement.

70.     Ms. Decker estimates that she contacted a minimum of 40 landlords or real estate agents to apply for advertised rental housing, all of whom automatically rejected her because she had a child under age six, or a housing choice voucher, or both.

71.     Finally, on April 1, 2018, after a sixteen-month housing search, Ms. Decker and her son were able to move into an apartment that was lead-safe, sanitary and in a neighborhood that Ms. Decker considered safe.

72.     The extended apartment search was costly, debilitating and stressful for Ms. Decker, who feared that she and her son would never be able to escape the poor conditions in her previous apartment and neighborhood.

73.     Based on the experience of being automatically and completely shut out of most of the Worcester rental housing market for sixteen months, Ms. Decker continues to worry about her ability to rent housing should she need to move before her child turns six. She is concerned that she would continue to face discrimination in the future if she decides to have another child, adopt a child, become a foster parent, obtain custody of a child under age six, or have a child under age six residing  with her in her home.

**E.     Plaintiffs Krzysztof Rowinski and Anna Micinska**

74.     In or around September 2016, Krzysztof Rowinski and Anna Micinska decided to rent an apartment in Northampton, Massachusetts.

75.     In 2018, they learned that Ms. Micinska was pregnant with their first child.  In or around March 2018, they sent an email to their landlord informing her that they were expecting a child but hoped to remain in the apartment.

21

76.     The following day, their landlord responded, congratulating them on their news and stating that they would have to move out because, allegedly, the landlord's daughter was planning to move into the apartment.

77.     When Ms. Micinska and Mr. Rowinski later learned the landlord's daughter would not be moving in, they contacted her again and asked if they could stay in the apartment.  Despite having repeatedly stated that they were excellent tenants, including in writing, the landlord responded by saying, "I'm sorry, that wouldn't be a good idea."

78.     Mr. Rowinski and Ms. Micinska struggled to find another suitable dwelling in the Pioneer Valley that would rent to them as a couple expecting a baby. By the time their landlord required them to move out, Mr. Rowinski and Ms. Micinska had not been able to rent another dwelling, forcing them to stay in a friend's house.

79.     Mr. Rowinski and Ms. Micinska eventually found a new dwelling at a higher price than their previous one.

80.     Mr. Rowinski and Ms. Micinska subsequently spoke to the new tenant in their old apartment. The new tenant stated that the landlord admitted that she asked Mr. Rowinski and Ms. Micinska to move out because she did not have a lead certificate and did not want to delead the apartment.

81.     With the assistance of MFHC, Mr. Rowinski and Ms. Micinska brought a housing discrimination case before the Massachusetts Commission Against Discrimination (MCAD). After the MCAD found probable cause that their landlord discriminated against them, the parties reached a settlement which required the landlord to delead the apartment when it became vacant and pay damages to Mr. Rowinski and Ms. Micinska.

82.     Mr. Rowinski and Ms. Micinska's experience of displacement due to housing discrimination at the time they were expecting their first child resulted in significant costs and emotional distress. They continue to worry about having to search for another rental dwelling in Massachusetts if they have to move again with their young son.

**F.      Plaintiff Massachusetts Fair Housing Center (MFHC)**

83.     MFHC is a non-profit full-service fair housing organization that was founded in 1989 by a group of homeless shelter employees and legal aid attorneys who recognized that unchecked housing discrimination was causing homelessness and unfairly restricting housing access in western Massachusetts.

84.     MFHC's mission is to end systemic housing discrimination and create more inclusive communities in western and central Massachusetts.

85.     In order to fulfill its mission, MFHC provides critically needed services, including public education about fair housing, accepting and investigating complaints of housing discrimination, and offering free legal services to victims of housing discrimination throughout western and central Massachusetts.

86.     MFHC receives over 300 complaints of housing discrimination every year. MFHC has limited resources and is only able to represent a small fraction of complainants. MFHC's efforts to investigate discrimination because of the Lead Law and to counteract the discriminatory effects of the Lead Law have diverted time and resources that could be used for other efforts, including investigation and enforcement of the fair housing laws.

87.     In order to counteract the discrimination created by the Lead Law, MFHC has engaged in an education campaign to inform families with children of their rights to access housing regardless of the presence of lead paint.  This campaign has included running a series of advertisements informing families with children of their right to access housing and authoring a law review article highlighting the discriminatory effects of the Lead Law.

88.     Further, MFHC has devoted significant staff time and resources to analyzing the nature and scope of the discrimination caused by the Lead Law, including but not limited to monitoring for discriminatory housing advertisements that mention the presence of lead paint, conducting testing focusing on lead paint discrimination, interviewing individuals affected by the Lead Law and meeting with advocacy groups addressing the issues of childhood lead poisoning and the Lead Law.

89.     All of these activities have required the diversion and expenditure of financial resources and staff time, and will continue to require MFHC to make special efforts to counteract the discriminatory effects of the Lead Law.

**G.     Injuries and Standing**

90.     The Commonwealth of Massachusetts' enactment and enforcement of the Massachusetts Lead Law results in systemic and rampant discrimination based on familial status in violation of the FHA. The existence and enforcement of the Lead Law in its current iteration constitutes a continuing violation.

91.     As a result of the Lead Law and the illegal discriminatory housing practices alleged herein, MFHC has suffered actual injury through diversion of its scarce resources from its

regular counseling, investigations, enforcement, and educational work, to investigating and remedying the discrimination against families with children caused by the Lead Law.

92.     As a result of the illegal discriminatory housing practices alleged herein, MFHC also has suffered actual injury through frustration of its mission. The Lead Law has frustrated and continues to frustrate MFHC's mission of eliminating housing discrimination and ensuring that all individuals have equal access to housing opportunities in all areas that MFHC serves, which has required MFHC to devote significant resources to develop and engage in activities to counteract the discrimination caused by the Lead Law. This includes monitoring, testing, and education regarding the Lead Law, landlords' obligations, and renters' rights, all of which require staff time and monetary resources.

93.     As a result of the Lead Law and the illegal discriminatory housing practices alleged herein, Plaintiff Theresa Decker suffered damages. She lost important housing opportunities, had fewer housing choices, searched longer before finding housing, and suffered emotional distress as a result of discrimination. She will be injured again in the future should she seek to move to a different rental dwelling with her young child or bring additional young children into her household.

94.     As a result of the Lead Law and the illegal discriminatory housing practices alleged herein, Plaintiffs Rowinski and Micinska suffered damages. They lost important housing opportunities, had fewer housing choices, searched longer before finding housing, paid more for their housing, and suffered emotional distress as a result of discrimination. They will be injured again in the future should they seek to move to a different rental dwelling with their young child or bring additional young children into their household.

95.     There now exists an actual controversy between the parties regarding Defendants' legal responsibility to comply with  the FHA. Accordingly, Plaintiffs are entitled to declaratory relief pursuant to 42 U.S.C. § 3613 (c) and Rule 57 of the Federal Rules of Civil Procedure.

96.     Unless enjoined, the Massachusetts Lead Law will continue to include facially discriminatory provisions, impose different terms and conditions and make housing unavailable based on familial status.  The pattern of discrimination described above will continue to limit the availability of housing for families with children. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from the Lead Law unless relief is provided by this Court. Accordingly, Plaintiffs are entitled to injunctive relief pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c) and Rule 65 of the Federal Rules of Civil Procedure.

## CLAIMS

### FIRST CAUSE OF ACTION
### (Fair Housing Act, 42 U.S.C. § 3604(a))

97.     Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

98.     Defendants, through their enforcement of the facially discriminatory provisions of the Lead Law that require landlords to abate lead hazards only when there a child under age six is present, have injured plaintiffs by committing discriminatory housing practices in violation of the FHA, 42 U.S.C. § 3604(a), including but not limited to the following conduct:

   a.  Engaging in any conduct relating to the provision of housing that otherwise makes unavailable or denies dwellings because of familial status, in violation of 24 C.F.R. § 100.70(b);

b. Enacting or implementing land-use rules, ordinances, policies, or procedures that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings to persons because of familial status, in violation of 24 C.F.R. § 100.70(d)(5);

c. Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. 24 C.F.R. § 100.7 (a)(iii).

99.    Accordingly, Plaintiffs are aggrieved persons entitled to relief under the FHA.

## SECOND CAUSE OF ACTION
### (Fair Housing Act, 42 U.S.C. §3604(b))

100.    Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

101.    Defendants' enforcement of the Lead Law creates different terms and conditions for families with children in violation of 42 U.S.C. §3604(b). The provision of the Lead Law that allows a housing provider to delay the occupancy of a rental unit by thirty days in order to delead the property when a child under the age of six is moving into the dwelling constitutes a different term or condition. There is no similar provision in the Lead Law allowing a housing provider to delay occupancy for households without a child under six.

102.    The thirty-day delay provision in the Lead Law also means that the pre-1978 unabated rental dwelling is not immediately available to families with children under age six, nor does it meet the standards of habitability for these families.  These families are further harmed during the 30-day delay because these families will have to bear all of the related financial and personal costs of the disruption caused by the delay.

.

104.   Accordingly, Plaintiffs are aggrieved persons entitled to relief under the FHA.

### THIRD CAUSE OF ACTION
### (Fair Housing Act, 42 U.S.C. §3604(c))

105.   Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

106.   Defendants' enactment and enforcement of the Lead Law constitutes a statement with respect to the rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status, in violation of 42 U.S.C. §3604(c). Defendants' discriminatory conduct in violation of subsection 3604(c) of the FHA includes:

    a.   Using words and phrases which convey that dwellings are available or not available to a particular group of persons because of familial status. 24 C.F.R. § 100.75(c)(1);

    b.   Expressing to agents, brokers, employees, prospective sellers or renters or any other persons a preference for or limitation on any purchaser or renter because of familial status. 24 C.F.R. § 100.75(c)(2).

107.   Accordingly, Plaintiffs are aggrieved persons entitled to relief under the FHA.

### **PRAYER FOR RELIEF**

Plaintiffs seek the following relief:

    a. A declaration that the provisions of the Lead Law that require lead abatement activity based solely on the presence of a minor child, Mass. Gen. Laws c. 111, §197, violates the FHA;

b. A permanent injunction barring Defendants from enforcing Mass. Gen. Laws ch. 111, §197, or any other law that requires lead abatement activity based solely on the presence of a minor child in the dwelling;

c. An award of litigation expenses, attorneys' fees, and costs; and

d. Any other appropriate relief.

Date:   November 20, 2019

Plaintiffs
By their attorneys,

/s/___Meris Bergquist_____
Meris Bergquist, BBO #600979
Ashley Grant, BBO #673451
Massachusetts Fair Housing Center
57 Suffolk Street
Holyoke, MA 01040
mbergquist@massfairhousing.org
agrant@massfairhousing.org
Tel: (413) 539-9796
Fax: (413) 533-9978

 /s/  Liza Cristol-Deman_____
Liza Cristol-Deman, Cal. Bar 190516
*Pro hac vice pending*
Brancart & Brancart
P.O. Box 686
Pescadero, CA 94060
lcristoldeman@brancart.com
Tel: (650) 879-0141
Fax: (650) 879-1103